**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **MARVIN THOMAS** | **CIVIL ACTION** |
| **VERSUS** | **NO: 23-5542** |
| **GRAND ISLE SHIPYARD LLC** | **SECTION "H"** |

## ORDER AND REASONS

Before the Court is Defendant's Motion for Summary Judgment (Doc. 41). For the following reasons, the Motion is **GRANTED**.

## BACKGROUND

Plaintiff Marvin Thomas, an African American, worked for Defendant Grand Isle Shipyard, LLC as a scaffold foreman and superintendent for many years before he was terminated on February 15, 2023. After his termination, Plaintiff filed a charge with the Equal Employment Opportunity Commission (EEOC) and then filed this action asserting claims for racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964. Plaintiff alleges that he consistently expressed interest in being considered for a promotion to project management positions and that he was passed over in favor of his white and Hispanic coworkers. He further alleges that he was terminated after he requested to meet with human resources about pay and

1

promotion before he returned offshore. Defendant moves for summary judgment dismissal of all of Plaintiff's claims against it. Plaintiff opposes.

## **LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1]  A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[2]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[3]  "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[4]  Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[5]  "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to

---

[1] Sherman v. Hallbauer, 455 F.2d 1236, 1241 (5th Cir. 1972).
[2] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[3] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 532 (5th Cir. 1997).
[4] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).
[5] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[6] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[7]   Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[8]

## LAW AND ANALYSIS

Plaintiff brings claims under Title VII for failure to promote and retaliation. Defendant argues that Plaintiff has failed to exhaust his administrative remedies and cannot prove a prima facie case on either claim. The Court will consider each argument in turn.

### A. Failure to Exhaust Administrative Remedies

At the outset, Defendant argues that Plaintiff has failed to exhaust his administrative remedies as to his failure to promote and retaliation claims. Defendant argues that although Plaintiff filed a charge of discrimination with the EEOC, Plaintiff only alleged therein that his termination was racially motivated and he did not assert any claim for failure to promote or retaliation.

"Title VII requires employees to exhaust their administrative remedies before seeking judicial relief."[9] "Title VII clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity

---

[6] John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

[7] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).

[8] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

[9] McClain v. Lufkin Indus., Inc., 519 F.3d 264, 273 (5th Cir. 2008).

3

to attempt to obtain voluntary compliance."[10]  The Fifth Circuit has stated that "a Title VII lawsuit may include allegations 'like or related to allegation[s] contained in the [EEOC] charge and growing out of such allegations during the pendency of the case before the Commission.'"[11] The Fifth Circuit advises using a "fact-intensive analysis" of the EEOC charge that "looks beyond the four corners of the document to its substance."

Here, Plaintiff's EEOC charge stated in its entirety:

I was hired by Grand Isle Shipyard, on or about November 2012, most recently as Scaffold Builder. I have been discriminated against because of my Race-Black/African American in that I was discharged after notifying supervisor that before I decided to go back to work, I wanted to meet with Human Resources in reference to Pay and Promotion. According to the company, I was discharged for job abandonment.

Plaintiff's EEOC charge only expressly sets forth a claim for discriminatory termination.[12] That said, the facts readily suggest a claim for retaliation in that he alleges he was terminated after requesting to meet with human resources. The EEOC charge does not, however, contain any facts that suggest a claim for failure to promote. Although Plaintiff alleged that he intended to discuss promotion with human resources, there are no allegations that he had previously sought promotion, that he was qualified for a promotion, that he was denied a promotion, or that co-workers of a different race were promoted over him. Further, the date of discrimination listed on Plaintiff's

---

[10] Pacheco v. Mineta, 448 F.3d 783, 789 (5th Cir. 2006).

[11] *McClain*, 519 F.3d at 273.

[12] Although Plaintiff's EEOC charge sets forth a claim that he was terminated on the basis of race, he did not allege a discriminatory termination claim in this matter.

EEOC charge is February 15, 2023—the date of his termination. Accordingly, the Court finds that Plaintiff's failure-to-promote claim cannot reasonably be said to grow out of the allegations of Plaintiff's EEOC charge, and therefore, he has failed to exhaust that claim.

## B. Failure to Promote

Even assuming that Plaintiff exhausted administrative remedies as to his failure to promote claim, the Court finds that he would be unable to succeed on such a claim because it is untimely.

> An employee who claims to be the victim of a racially motivated failure to promote or train is put on notice that his rights have been violated at the time the adverse employment decision occurs, and must therefore bring the claim within [300] days of the adverse decision.[13]

Plaintiff contends that he repeatedly expressed interest in a promotion, but he does not show any adverse employment decision that occurred within 300 days of the filing of his EEOC charge. The white or Hispanic coworkers identified by Plaintiff as comparators were promoted as far back as 2017 and 2019.[14] Accordingly, any failure-to-promote claim would be untimely. Further,

---

[13] Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 352 (5th Cir. 2001).

[14] Plaintiff identifies Andrew Capell (also referred to as Crappel), Thomas Long, Johnny Medina, and Josean Almodovar as the white and Hispanic coworkers who were promoted into project management positions similar to those Plaintiff sought. Defendant shows that Capell was rehired as a project manager in 2019 and has not been promoted since; Long was last promoted in 2017 to crew superintendent; Medina was rehired as a project manager in 2019; and Almodovar served as a project manager on a project in 2017, but remains employed with Defendant as a superintendent. Plaintiff does not dispute these facts. Rather, he argues that "[c]omparator promotions occurring outside the statutory limitations period may still be probative of discriminatory motive, pattern, or intent." Doc. 54. While perhaps true, this does not remedy the fact that Plaintiff has not identified a promotion for which a white or Hispanic coworker was chosen over him that occurred within the statute of limitations.

Plaintiff's attempts to apply the continuing violation doctrine fails because the continuing violation doctrine does not apply to discrete acts such as failures to promote.[15] Accordingly, Plaintiff's failure to promote claim is untimely.

## C. Retaliation

Next, Defendant argues that Plaintiff cannot establish a prima facie retaliation claim. Regarding a Title VII claim of retaliation, the Fifth Circuit has stated that:

> A plaintiff establishes a prima facie case for unlawful retaliation by proving (1) that she engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action.[16]

Defendant argues that Plaintiff cannot show any of these elements. The Court will first review the undisputed facts before turning to the parties' arguments.

It is undisputed that in December 2022, Plaintiff was involved in an incident while working on a hitch on a Chevron platform called Jack/St. Malo, or JSM, and Chevron requested his removal from the platform. Upon returning to land, Defendant found Plaintiff another work assignment on a platform called Hess Baldpate, and Plaintiff accepted the position and completed the hitch. Upon his return to land, Plaintiff failed to respond to Defendant's attempts to schedule him for his next hitch. On February 10, 2023, Plaintiff

---

[15] Newton v. Securitas Sec. Servs., USA, Inc., 250 F. App'x 18, 21 (5th Cir. 2007); Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002). Further, no failure to promote occurred during the limitation period. Abrams v. Baylor Coll. of Med., 805 F.2d 528, 533 (5th Cir. 1986) ("[T]o establish a continuing violation, a plaintiff must show some application of the illegal policy to him (or to his class) within the 180 days preceding the filing of his complaint.").

[16] Long v. Eastfield Coll., 88 F.3d 300, 304 (5th Cir. 1996); 42 U.S.C. § 2000e–3(a).

appeared on a three-week report, indicating that he had not accepted a job assignment to go offshore in more than three weeks. On February 13, 2023, Eric Chouest, Defendant's Offshore Personnel Manager, texted Plaintiff to inquire as to his status. The following day, Plaintiff responded:

> Good morning, Eric. I will be down there maybe next week or so. I do not feel well about how I was done at JSM, and I feel that I should be a project manager. I have been expressing moving up in this company since 2019. I want to be a project manager with a 2 and 2 schedule and pay rate adjustment as well. I will be down there next week or so to talk to Roger and probably HR.

Choest responded that a representative from Defendant was trying to call Plaintiff to line up work and requested that Plaintiff please answer. Plaintiff failed to answer or otherwise contact Defendant. Plaintiff was terminated on February 15, 2023.

Defendant contends that Plaintiff was terminated for job abandonment because Plaintiff had not accepted a job assignment in more than a month and was not responsive. Plaintiff testified that he did not receive a specific date and time to report for an assignment and was not told that failure to immediately accept an assignment would be treated as job abandonment. Plaintiff contends that he was terminated in retaliation for raising concerns about his lack of promotion and his intention to speak with human resources.

Defendant first argues that Plaintiff cannot succeed on a retaliation claim on these facts because he did not participate in an activity protected under Title VII. Plaintiff argues that he engaged in protected activity when he "raised concerns about how he was treated after the Jack/St. Malo incident, about his pay, about his lack of advancement relative to specific coworkers (all

7

of a different race-not African American), and that he sought HR involvement 'in reference to Pay and Promotion.'"[17]

Under Title VII, "[p]rotected activities consist of (1) opposing any practice deemed an unlawful employment practice by title VII (the 'opposition clause') or (2) making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under title VII (the 'participation clause')."[18] It is undisputed that there was no Title VII proceeding or investigation prior to Plaintiff's termination. Therefore, in order to satisfy the first prong of his retaliation claim, Plaintiff must show that he opposed a practice deemed unlawful under Title VII, such as a failure to promote on the basis of race.[19] His complaints regarding his treatment after the JSM incident and his grievances regarding pay and promotion unrelated to racial discrimination are not protected by Title VII.

Plaintiff provided conflicting testimony regarding whether he expressed to Defendant his belief that he was not promoted because of his race. He admitted in his deposition that he never filed an official grievance or called Defendant's discrimination hotline.[20] Plaintiff further testified that he never

---

[17] Doc. 54.

[18] Ellis v. Compass Grp. USA, Inc., 426 F. App'x 292, 296 (5th Cir. 2011).

[19] 42 U.S.C.A. § 2000e-2 ("It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.").

[20] Doc. 41-5 at 10.

raised issues of racial discrimination prior to his termination.[21] He stated that he did not want to "rock the boat" and that he feared retaliation if he brought up his belief that he had not been promoted because of his race.[22] He stated that he did not include any mention of race in his text message to Eric Chouest because he wanted to see if he would be offered a promotion before he brought up the issue of race.[23] Indeed, despite arguing that his text message to Eric Chouest precipitated his firing, he did not mention race or his belief that he was not promoted because of his race in that message. Because of this omission, Plaintiff's text message to Eric Chouest cannot satisfy the first prong of his retaliation claim.

At another point in his deposition, however, Plaintiff testified that in 2019 he had a conversation with Roger Camardelle, an offshore coordinator for Defendant, during which Plaintiff expressed that he felt he was not getting the same treatment as his white and Hispanic coworkers with respect to on-the-job training and promotions.[24] Accordingly, viewing the record evidence in the light most favorable to Plaintiff, the Court must conclude that his 2019 conversation constitutes protected activity under Title VII.

Assuming that the 2019 conversation satisfies the first prong, however, Plaintiff cannot satisfy the third.[25] Plaintiff has offered no evidence showing a causal connection between his 2019 conversation alleging failure to promote on the basis of race and his 2023 firing. In fact, Plaintiff was promoted to

---

[21] *Id.* at 22.

[22] *Id.*

[23] *Id.* at 43.

[24] *Id.* at 37.

[25] Defendant also argue that Plaintiff did not suffer an adverse employment action because he abandoned his job. The Court need not reach this argument.

superintendent in 2021 and received a pay raise.[26] In satisfying the third element of a prima facie cause of retaliation, Plaintiff relies only on the temporal proximity between the text message indicating his intention to speak with human resources and his termination. As the Court explained above, the text message, which does not mention race or discrimination at all, is not a protected activity under Title VII. Accordingly, Plaintiff cannot establish a prima facie case of retaliation.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED**, and Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana this 25th day of February, 2026.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[26] Doc. 41-5 at 53.